UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DIANNE D., : | |
| Plaintiff, : | |
| : | |
| v. : | C.A. No. 18-312JJM |
| : | |
| NANCY A. BERRYHILL, ACTING : | |
| COMMISSIONER OF SOCIAL SECURITY, : | |
| Defendant. : | |

# REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

After earning her bachelor's degree and working for many years, Plaintiff Dianne D. began to suffer from abdominal pain; she had two hernia surgeries in 2009 and 2010, but the pain continued. In the summer of 2013, she had what was supposed to be laparoscopic surgery to resolve abdominal adhesions, but the intervention went horribly wrong. Plaintiff almost died from the complications (including a punctured aorta and a pulmonary embolism). While she ultimately recovered, since the 2013 surgery, Plaintiff has persistently suffered from diffuse abdominal pain that is chronic and constant, waxing and waning from moderate to severe. No treating provider or medical expert has been able to diagnose the reason for the pain and all treating providers concur that more abdominal surgery would not be appropriate. Treating sources have consistently accepted as reliable Plaintiff's statements about the intensity and severity of the pain and have consistently prescribed powerful medications, including Fentanyl, to alleviate it. All sources also concur that Plaintiff is experiencing significantly debilitating pain and none have questioned the appropriateness of her prescriptions for an array of narcotic

medications.[1] In an opinion signed in July 2017, Plaintiff's longtime treating doctor, Dr. John Bergeron, specifically opined that Plaintiff is not a malingerer.

Plaintiff claims that the pain is so impactful on her ability to function that she cannot work at all. Dr. Bergeron concurs; his July 2017 opinion provides a function-by-function analysis of Plaintiff's limitations. However, in reliance on a non-examining physician, Dr. Mitchell Pressman, who opined that Plaintiff's "ADLs" were inconsistent with her statements, the ALJ discounted Plaintiff's description of the intensity of the pain and afforded little weight to Dr. Bergeron's treating source opinion because it clashed with the Pressman opinion and was based in part on Plaintiff's statements. Finding Plaintiff to have the RFC[2] to perform light work, the ALJ denied her application for Disability Insurance Benefits ("DIB") under 42 U.S.C. § 405(g) of the Social Security Act (the "Act").

The matter is now before the Court on the parties' dueling dispositive motions. They been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having reviewed the entirety of the record and in reliance on the arguments of the parties at the hearing held on May 29, 2019, I find that the ALJ erred in rejecting the opinion of a well-qualified treating physician whose findings not only were consistent with the rest of the treating record but also were appropriately based on objective medical evidence, including repeated examinations and observations of Plaintiff, in addition to Dr. Bergeron's professional judgment based on Plaintiff's subjective statements describing the intensity and functional impact of the pain. See Ormon v. Astrue, No. 11-2107, 497 F. App'x

---

[1] The parties concur that the record is devoid of any suggestion that Plaintiff's statements about pain have ever been animated by drug-seeking.

[2] "RFC" refers to residual functional capacity, which is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. § 404.1545(a)(1).

2

81, 85-86 (1st Cir. Sept. 7, 2012). When this error is coupled with the ALJ's troubling reliance on a non-examining physician engaged to perform a file review (Dr. Mitchell Pressman), who reviewed only a portion of the medical record and whose opinion seems wrongly based on the lack of physical findings or etiology for the pain, I find that the ALJ's error is not harmless and that the matter should be remanded for further consideration. Accordingly, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 12) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 17) be DENIED.

I. **Background**

Over the years after the 2013 failed abdominal surgery, Plaintiff was treated for abdominal pain by the following: her general practitioner, Dr. Bergeron, who saw her regularly and performed physical examinations beginning in early 2014, and continuously throughout the period; the treating team at the Warwick Pain Center, where she initiated treatment in early 2015, and continued throughout the period; gastroenterologist, Dr. Bradford Lavigne, who saw her several times in 2015; and various physicians with University Surgical Associates, who saw her throughout 2015. Over the arc of the period covered by the record, Plaintiff's abdominal pain remained substantially the same. These treating sources all performed physical examinations and made clinical observations; they recorded consistent notations:

- "[S]hooting pain in groins and peri umbilically." Tr. 305.
- "[H]aving trouble tolerating her usual activities." Tr. 452.
- "Continues to have severe pain with defecation, walking and carrying." Tr. 486.
- "[P]ain is significantly interfering with all aspects of her life." Tr. 490.
- "Will be requesting handicap parking to reduce need for walking which aggravates pain." Tr. 545.

3

- On examination "grimaces with movement of trunk." Tr. 552.

- "Reports she is not able to accomplish much on a daily basis without significant pain." Tr. 636.

At some appointments, the record reflects providers who reference slight improvement or positive response to medications; however, these positive reports are muted, sometimes linked to the lack of any activity. E.g., Tr. 402 ("still with sharp bursts of abdominal pain but overall is making some progress since leaving her job . . . pain medication has moderately reduced their [sic] pain. . . . Patient reports that . . . ability to function in normal daily activities shows little improvement"); Tr. 555-56 (while "[t]olerating medication well and denies side effects . . . [and] [r]eports completing ADLs well on current regimen," provider nevertheless renews prescriptions for Fentanyl, Tramadol and Vicodin and starts Hydrocodone); Tr. 612-15 ("medication is working to keep her pain level within a tolerable range without any side effects or issues," yet patient reported that pain spiked to 9 out of 10 in past two weeks and, on examination, she "appears mildly distressed due to pain").

From the failed 2013 surgery until May 2016, Plaintiff continued to work with great difficulty until her employer's criticism of her inability to perform essential tasks due to pain and the side effects of the medication caused her to submit her resignation letter, with Dr. Bergeron's concurrence that the impact of the pain on her ability to function would preclude all work. Tr. 70, 709; see Tr. 386 ("I agree that applying for disability is the only reasonable course of action at this time."). She stopped working on June 11, 2016, her alleged onset date. Throughout the period covered by the record, to make the pain tolerable, Plaintiff was prescribed Fentanyl, Hydrocodone, Tramadol, Paxil and Gabapentin, as well as (briefly) Horizant. She slept in a recliner or adjustable bed. Movement exacerbated pain. E.g., Tr. 377

Dr. Bergeron's July 2017 treating source opinion indicates that Plaintiff's diagnosis is chronic abdominal pain and that her symptoms include sharp, stabbing, diffuse abdominal pain that is increased by posture change and movement (among other triggers), as well as fatigue, constipation and sedation. Tr. 609. Consistent with all other treating providers, as well as with his own treating notes, Dr. Bergeron noted that Plaintiff's pain had persisted essentially unchanged since 2013. Id. Consistent with all other treating providers, as well as with his own treating notes, Dr. Bergeron noted his reliance on physical examinations resulting in the relevant clinical finding of diffuse abdominal tenderness. Id. However, for the portion of the form dealing with functional limits, Dr. Bergeron indicated that he was also relying on "pt reports." Tr. 610. In this part of his opinion, Dr. Bergeron opined to specific functional limitations, including that Plaintiff could only sit, stand or walk for fifteen minutes at a time and that she needed to be in a reclined position for five hours of the day. Tr. 610-11. Dr. Bergeron estimated that Plaintiff would miss more than four days of work a month because of pain and fatigue, as well as the effects of medication. Tr. 611. With regard to his assessment of the reliability of Plaintiff's subjective statements about the pain, based on his three years of observations and examinations during many face-to-face encounters, Dr. Bergeron specifically opined that Plaintiff is not a malinger. Tr. 610.

Seven months before Dr. Bergeron signed his opinion, Dr. Mitchell Pressman was engaged to perform a file review of the medical evidence as of the reconsideration level, through December 20, 2016. Tr. 88-95. Although Dr. Pressman noted Dr. Bergeron's September 2016 notation that Plaintiff's pain was only under "fair control," and was aware of the powerful pain medications prescribed for her, Tr. 92, he nevertheless opined that Plaintiff could perform the full range of light work, explaining this conclusion because: "Only physical finding is

5

generalized abdominal tenderness with palpation. No etiology has been determined." Tr. 94. In rejecting Plaintiff's subjective statements about the pain, Dr. Pressman, who had never examined Plaintiff, vaguely referenced unspecified "ADLs" as his basis for finding that Plaintiff's "[s]ubjective allegations of impairment are not supported by objective MER." Tr. 93. Because the record continued to develop after his file review, Dr. Pressman did not see over a hundred pages of medical records reflecting treatment, principally with Dr. Bergeron and the Warwick Pain Clinic; these reflect that the pain continued consistently to spike to eight or nine out of ten and they include provider notations finding that the pain had increased or worsened. Tr. 8-31, 612-707; e.g., Tr. 688 ("The problem has worsened. The symptoms are constant."). Nor did he see the Bergeron opinion or the last record in the file reflecting a referral by Dr. Bergeron to a neurologist at Yale for follow up regarding abdominal pain. Tr. 15.

A month after the Bergeron opinion was signed, the ALJ held the August 21, 2017, hearing, at which he called Dr. Stephen Kaplan to testify as a medical expert. Tr. 64-73. Dr. Kaplan was asked a single question by the ALJ: "what if any of the diagnoses would be?" Tr. 70. Dr. Kaplan responded, "I had no diagnosis," id., which he adjusted to "persistent abdominal pains," Tr. 71, with "no specific etiology," Tr. 73. He then offered to and did "go through the record," Tr. 70, testifying that he had not seen findings of "guarding,"[3] Tr. 72, weight loss or fatigue, which he found to be "important negatives," Tr. 71. Nevertheless, Dr. Kaplan acknowledged that the record "always demonstrated some [abdominal] tenderness to palpation," id., that "she's on a fair amount of pain medication which sometimes can have consequences,"

---

[3] This is not entirely accurate: "guarding" was found in 2013, soon after the failed laparoscopic surgery, and in 2015, by Dr. Lavigne. Tr. 274, 300. However, after Plaintiff stopped working and spent several hours each day reclining, guarding was no longer found. E.g., Tr. 704 (patient has to change position frequently for comfort, spends most of day reclining and able to stand, walk and sit only for short periods; on examination, abdominal tenderness diffuse, no guarding).

6

Tr. 73, and that "the quality of the pain is stabbing and throbbing and increases with activity," Tr. 72. No one asked Dr. Kaplan whether he found Plaintiff's subjective statements to be exaggerated or what he thought her RFC would be.

## II.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999). Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). Thus, the Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner. Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148,

153 (1st Cir. 1989)). "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts." Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, No. CA 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).

## III. Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 416(I); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. 20 C.F.R. §

404.1520(e)-(f). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. 20 C.F.R. § 404.1520(g). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five step process applies to both DIB and SSI claims).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits. Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982); 42 U.S.C. §§ 416(i)(3), 423(a), 423(c). If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability. Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### B. Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2). The ALJ's decision must articulate the weight given, providing "good reasons" for the determination. See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set

forth findings). The regulations confirm that, "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2).

   **C.    Evaluation of Subjective Symptoms**

When an ALJ decides to discount a claimant's subjective statements about the intensity, persistence and severity of symptoms, he must articulate specific and adequate reasons for doing so or the record must be obvious. See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986); Rohrberg, 26 F. Supp. 2d at 309-10. A reviewing court will not disturb a clearly articulated finding supported by substantial evidence. See Frustaglia, 829 F.2d at 195. If proof of disability is based on subjective evidence so that the credibility determination is determinative, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)). Guidance in evaluating the claimant's statements regarding the intensity, persistence, and limiting effects of subjective symptoms is provided by SSR 16-3p, 2017 WL 4790249, at *49462 (Oct. 25, 2017). It directs the ALJ to consider the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; any other relevant evidence; and whether statements about the intensity, persistence, and limiting effects of symptoms are consistent with the medical signs and laboratory findings. SSR 16-3p, 2017 WL 4790249, at *49465.

   **D.    Pain**

"Pain can constitute a significant non-exertional impairment." Nguyen v. Chater, 172 F.3d 31, 36 (1st Cir. 1991). Congress has determined that a claimant will not be considered disabled unless medical and other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. SSR 16-3p, 2017 WL 4790249, at *49462; 20 C.F.R. § 404.1529(c)(3). In determining whether the medical signs and laboratory findings show medical impairments that reasonably could be expected to produce the pain alleged, the ALJ must consider the following:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> 4. Treatment, other than medication, for relief of pain;
>
> 5. Functional restrictions; and
>
> 6. The claimant's daily activities.

Avery, 797 F.2d 19, 29 (1st Cir. 1986); SSR 16-3p, 2017 WL 4790249, at *49465; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I. Nov. 30, 2011). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A). However, the individual's statements about the intensity, persistence, and limited effects of symptoms may not be disregarded "solely because the objective medical evidence does not

substantiate the degree of impairment-related symptoms." SSR 16-3p, 2017 WL 4790249, at *49465.

If a treating physician finds that his patient's physical impairment is real, the physician may rely on the claimant's subjective statements regarding the impact of pain on the ability to function in opining to his patient's RFC and the ALJ may not discount an otherwise well-founded opinion on that basis. Ormon, 497 F. App'x at 85-86. "[T]he statements of the claimant and his doctor must be additive to clinical or laboratory findings" in considering pain's functional implications. Avery, 797 F.2d at 21. It is error for the ALJ to place "an extreme insistence on objective medical finings to corroborate subjective testimony of limitations of function because of pain." Id. at 22.

## IV. Analysis

This is a case where the degree of impairment depends on the reliability of Plaintiff's subjective statements regarding the intensity, persistence and limiting effects of what she has been experiencing since her date of alleged onset. The thrust of Plaintiff's appeal is her claim that the ALJ erred in affording "substantial evidentiary weight" to the non-examining December 2016, Pressman opinion, while failing to provide "good reasons" for giving "little weight" to the July 2017 Bergeron treating source opinion. See 20 C.F.R. 404.1527(c)(2) (agency will "always give good reasons" for the weight it gives treating source opinion); SSR 96-2p (same). As a result, Plaintiff contends, the ALJ's holding that Plaintiff is not disabled improperly places excessive weight on her physical symptoms, particularly on the absence of an explanation for or etiology of the pain.

I begin the analysis with the opinion from Dr. Bergeron, who was Plaintiff's primary care physician and saw her regularly from early 2014 through the end of the period in issue. The

12

ALJ's "good reasons" for essentially ignoring it may be briefly summarized: "it is not consistent with the overall record and further is based on [Plaintiff]'s self-report," as well as that the opinion that Plaintiff would miss more than four days a month of work was "speculative." Tr. 41. None of these "good reasons" can withstand scrutiny.

The first "good reason" – that Dr. Bergeron's opinion "is not consistent with the overall record" – is simply not accurate. As the Commissioner conceded at the hearing, Dr. Bergeron's opinion is consistent not just with his own treating notes, but also with the balance of the treating medical report in that every physician Plaintiff encountered made physical findings that Plaintiff suffered from persistent and diffuse abdominal pain and credited Plaintiff's statements regarding intensity of the pain. This consistency is corroborated by the lack of adverse comment by any provider regarding the appropriateness of the pain medication that was prescribed throughout the period. Even Dr. Kaplan's remarks at the hearing are not inconsistent with the Bergeron opinion. There is only one piece of inconsistent evidence – the Pressman non-examining opinion. It cannot serve as a surrogate for the "overall record." Because Dr. Bergeron's opinion is consistent with the entirety of the treating record, the ALJ's first "good reason" – "not consistent with the overall record" – is simply wrong.

For his second "good reason," the ALJ critiques the Bergeron opinion because Dr. Bergeron's notation – "pt reports" – makes clear that he relied, in part, on Plaintiff's subjective statements about the intensity of her pain in forming his RFC opinions. This is not a "good reason" to discount an otherwise competent treating source opinion who is opining on the limiting effects of pain. See Renaud v. Colvin, 111 F. Supp. 3d 155, 163 (D.R.I. 2015) ("when rendering an opinion on the severity of a mental health condition, subjective complaints are frequently the most significant information, and Social Security regulations recognize the

13

legitimacy of subjective complaints to establish the severity of symptoms"). As the First Circuit made clear in Ormon, 497 F. App'x at 85-86, reliance on the claimant's subjective statement regarding pain is entirely appropriate, as long as there are also objective medical findings. Id. And that is what is presented here – over a period of more than three years, Dr. Bergeron repeatedly examined Plaintiff, made objective clinical observations and listened to her subjective complaints to assess the severity of her condition and what treatment to provide. The reference to "pt reports" does not suggest Dr. Bergeron mindlessly regurgitated Plaintiff's statements;[4] rather, it confirms that the opinion is carefully nuanced and reflects Dr. Bergeron's medical judgment based on his objective medical findings and his professional evaluation of the reliability of Plaintiff's statements about the functional limitations caused by the pain. See id. (ALJ's rejection of treating physician's opinion because he relied on subjective complaints requires remand where physician's RFC assessment was clearly supported by both objective medical findings and subjective complaints).

The ALJ's final "good reason" to discount the Bergeron opinion is that the finding that Plaintiff would miss four plus days a month is "speculation." This "good reason" makes no sense. Based on his medical training and experience, supplemented by a three-year-long face-to-

---

[4] The Commissioner argues that Dr. Bergeron's notation, "pt reports," was fairly interpreted by the ALJ as Dr. Bergeron's intent to act, in effect, as an amanuensis for Plaintiff, recording her statements. This proposition is facially contradicted by Dr. Bergeron's signature on the form, which he applied with no such reservation. It is also contradicted by Dr. Bergeron's notation in the treating record from the day he signed the letter opining that Plaintiff's pain made work impossible. Tr. 386 ("I agree that applying for disability is the only reasonable course of action at this time."). Nothing in his treating notes suggests otherwise; therefore, this case is very different from those where reliance on subjective statements is deemed to be a fatal flaw. See Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *12 (D.R.I. Mar. 3, 2015) (physician assistant's opinion properly discounted because it was based on plaintiff's subjective complaints that were contradicted by treating notes of physician and other providers); Lenfest v. Colvin, No. 2:14-cv-229-JHR, 2015 WL 1539725, at *3 (D. Me. Apr. 7, 2015) (physician opinion properly discounted where physician's treating notes make clear that claimant, not he, "[f]illed out paperwork for disability – questions were answered according to what the patient was telling me she can or can't do"). The record here is not ambiguous – this is plainly Dr. Bergeron's opinion.

14

face treating relationship with Plaintiff, Dr. Bergeron made a medical judgment regarding Plaintiff's ability to sustain employment.[5] To label this as speculation is error.

What remains is the inconsistency between the Bergeron opinion and the non-examining Pressman opinion. At first blush, Plaintiff's argument appears to be based on a *per se* rule that the opinion of a non-examining source who reviews less than the full record must always be discounted and afforded less weight. This proposition clashes with the well-settled principle, recently restated by the First Circuit, that a non-examining assessment may be credited as substantial evidence despite the examiner's access to less than the full record as long as the ALJ finds no material change in the claimant's status.[6] Anderson v. Astrue, No. 1:11-cv-476-DBH, 2012 WL 5256294 (D. Me. Sept. 27, 2012), adopted, 2012 WL 5252259 (D. Me. Oct. 23, 2012), aff'd, No. 13-1001 (1st Cir. Jun. 7, 2013). To hold otherwise ignores the reality that Dr. Pressman, like every non-examining or consulting source deployed to opine during the administrative review of applications, provides an opinion at a stage when the medical record is still developing. Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009) ("to render a state agency physician's opinion irrelevant merely because [he] was not privy to updated medical records would defy logic and be a formula for paralysis") (citing Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993) (no record is ever "complete" as a claimant may always obtain another medical examination)). I reject Plaintiff's argument that a non-examining source opinion provided before the medical record is complete is subject to *per se* discounting, despite a well-grounded finding of no material worsening.

---

[5] The fact that Dr. Bergeron supplemented this finding with his irrelevant opinion on the ultimate issue ("not able") is beside the point. Tr. 611.

[6] This proposition is not contradicted by the First Circuit's decision in Padilla v. Barnhart, 186 F. App'x 19 (1st Cir. 2006). Padilla holds that the opinions and assessments of the consulting source, which are necessarily based on an incomplete medical record, may not be assigned controlling weight, but that the opinion of a treating physician is not entitled to more weight simply because of the provider's status as a treating source. See id. at 22.

15

Nevertheless, during the hearing, Plaintiff developed other arguments challenging the Pressman opinion that hit the mark. Plaintiff points out that Dr. Pressman's focus was on Plaintiff's minimal physical findings and lack of etiology to explain what was wrong with her abdomen. Tr. 94. This approach clashes with Avery's holding that "extreme insistence on objective medical findings to corroborate subjective testimony of limitation of function because of pain" is error. 797 F. 2d at 22. It disregards SSR 16-3p's mandate that, "[w]e must consider whether an individual's statement about the intensity, persistence, and limited effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." 2017 WL 4790249, at *49464. Here, Dr. Pressman's finding that Plaintiff's statements about her pain are not consistent with the medical evidence is based on nothing more than a cryptic reference to unspecified "ADLs."[7] Tr. 93. With a competent treating source (Dr. Bergeron) opining otherwise and with Dr. Kaplan's limited testimony consistent with the Bergeron opinion, this is not enough. See Francine L. v. Berryhill, C.A. No. 17-00400-JJM, 2018 WL 4328845, at *7 (D.R.I. Sept. 11, 2018), adopted, C.A. No. 17-00400-JJM (D.R.I. Oct. 1, 2018) (error to rely heavily on non-examining psychologists who based their opinions on substantially and materially incomplete record and their opinions clashed with treating and examining source opinions); Mary K. v. Berryhill, 317 F. Supp. 3d 664 (D.R.I. July 30, 2018) (remand ordered because error to rely exclusively on non-examining physicians who reviewed substantially

---

[7] On remand, the ALJ may consider further the post-Pressman evidence that Plaintiff and her husband were seeking to become adoptive parents, Tr. 699, and that Dr. Bergeron believed she was physically capable of doing so "despite her problem of chronic pain." Tr. 702. The record before the Court reflects that Dr. Pressman was unaware of this development because it post-dated his review, while Dr. Bergeron was aware of it and, therefore, considered it when he signed his July 2017 opinion. Similarly, Dr. Kaplan did not mention it in opining that Plaintiff's pain was persistent and chronic. As the case presently stands, there is only the ALJ's lay judgment to support the conclusion that the functional capabilities Dr. Bergeron deemed necessary to care for a child are inconsistent with the functional limits in Dr. Bergeron's opinion. Jessica M. v. Berryhill, No. CV 17-464JJM, 2018 WL 6731549, at *5 (D.R.I. Nov. 7, 2018) (invoking "fundamental principle that disability determinations may not be based on 'judging matters entrusted to experts'") (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1991)).

incomplete record and whose opinions were contradicted by treating sources and the state agency examining psychologist). Based on these deficits, I find that it was error for the ALJ to rely on the Pressman opinion as substantial evidence.

Finally, I do not find this to be a case where the ALJ made a well-supported-by-substantial-evidence finding that Plaintiff's subjective statements exaggerated the intensity or limiting impact of her pain. Rather, Plaintiff has correctly posited that the ALJ erred in finding that Plaintiff's subjective statements must be discounted for essentially the same insufficient reason that he marshaled to discount Dr. Bergeron – their inconsistency with a medical record that, contrary to all treating sources, the ALJ found reflected successful management of pain with medication that did not pose persistent side effects. To reach this conclusion, the ALJ cherry-picked provider notes, focusing, for example, on a notation that "[activities of daily living] were well," but ignoring the opposite conclusion with supportive findings on examination at the very next appointment. Tr. 550-52 ("Using adjustable bed, limiting physical activities to help deal with pain"; "grimaces with movement of trunk"); see Tr. 559 ("reports increased grogginess" due to medication). The ALJ also relied heavily on Dr. Kaplan's observation that guarding, weight loss and significant fatigue were not present during the period in issue (though guarding was present prior). See Tr. 71-72. However, Dr. Kaplan did not testify that Plaintiff's statements were exaggerated or reflected malingering;[8] to the contrary, he confirmed both that Plaintiff's abdominal pain was real and that her pain medication "can have consequences." Tr. 71-73. That leaves only the ALJ's reliance on Plaintiff's activities of daily living; however, as recited in his opinion, those are extremely limited, consisting of the ability to drive short distances and to do small loads of laundry, coupled with attempts to continue her church-related

---

[8] Dr. Bergeron opined to the absence of malingering. Tr. 610.

activities.  This is materially less than what was found to amount to substantial evidence in Coskery v. Berryhill, 892 F.3d 1, 7 (1st Cir. 2018) ("ability to perform household chores, care for a dog, shop for groceries, and engage in other daily activities" is substantial evidence supporting finding that subjective statements lacked credibility).  Accordingly, I find that Plaintiff's attack on the viability of the ALJ's "credibility" finding is well founded and is an independent reason why the case should be remanded.  See Forbes v. Colvin, No. CA 14-249-M-PAS, 2015 WL 1571153, at *11 (D.R.I. Apr. 8, 2015) ("where a claimant's allegations are rejected, the ALJ must articulate specific and adequate reasons for doing so") (internal quotation marks omitted).

## V.     Conclusion

Based on the foregoing analysis, I recommend that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (ECF No. 12) be GRANTED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 17) be DENIED and that the matter be remanded pursuant to Sentence Four for further consideration of the weight to be afforded to the opinions of Dr. Bergeron and Dr. Pressman, as well as to reconsider the reliability of Plaintiff's subjective statements.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 19, 2019